SCHULTZ TRANSIT, INC., Schultz Leasing, Inc., and Watkins Products, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

Civ. A. No. 1–62–15.

United States District Court
D. Minnesota,
First Division.

Aug. 27, 1962.

Sidney S. Feinberg and Robins, Davis & Lyons, Minneapolis, Minn., for plaintiffs.

Norman A. Barth, Winona, Minn., for plaintiff Watkins Products, Inc.

Robert S. Burk, Atty., Interstate Commerce Commission, Washington, D. C.; Robert W. Ginnane, Gen. Counsel, Interstate Commerce Commission, Washington, D. C.; Lee Loevinger, Asst. Atty. Gen., Washington, D. C.; John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C.; and Miles W. Lord, U. S. Atty., Minneapolis, Minn., for defendants.

Before SANBORN, Circuit Judge, and NORDBYE and LARSON, District Judges.

PER CURIAM.

This action was brought by the plaintiffs on January 22, 1962, pursuant to 28 U.S.C. §§ 1336 and 1398, to set aside a cease-and-desist order of the Interstate Commerce Commission entered December 7, 1961, in its No. MC–C–2598, Schultz Transit, Inc., Investigation of Operations. The order was based upon a determination by the Commission in its Report of December 7, 1961, that "Schultz Transit, Inc., and Schultz Leasing, Inc., have been and are engaged in transportation, in interstate or foreign commerce for compensation, as common or contract carriers by motor vehicle, without appropriate authority in violation of sections 203(c) and 206(a) (1) or 209(a) (1) of the Interstate Commerce Act [49 U.S.C. §§ 303(c), 306(a) (1), 309(a) (1)]," and that "Watkins Products, Inc., to the extent that it is beneficially interested in or affected by said operations, is and has been participating in concert with said for-hire carriers in the described violations." Schultz Transit, Inc., and Schultz Leasing, Inc., were ordered by the Commission to cease and desist and to abstain from all operations and practices found by the Commission to be unlawful, "unless and until appropriate authority therefor is obtained." Watkins Products, Inc., was ordered to cease, desist and abstain from participating in the operations and practices determined by the Commission to be unlawful and unauthorized.

The plaintiffs contend: (1) that the Commission's order is based on a redetermination of issues which were already settled adversely to it by a court of competent jurisdiction; (2) that the order is without an adequate evidentiary basis; and (3) that the order is arbitrary and capricious.

The order of the Commission if sustained will apparently put an end to transportation operations which The J. R. Watkins Company, now Watkins Products, Inc., of Winona, Minnesota, and Schultz Transit, Inc., have since early in 1955 carried on under lease agreements first entered into by them on March 24, 1955, which it was believed would enable The J. R. Watkins Company lawfully to transport as a private carrier its own merchandise in motor equipment leased from Schultz Transit, Inc., which was at that time a carrier of exempt agricultural commodities. Schultz Leasing, Inc., of Winona, Minnesota, was organized in 1960 in order to separate the leasing operations involving Watkins Products, Inc., from other operations of Schultz Transit, Inc. New lease agreements, in the identical form of the pre-existing leases, were entered into by Watkins and Schultz Leasing, Inc., on February 7, 1961. The transportation operations after that date continued substantially as before.

We shall refer to both Schultz Transit, Inc., and Schultz Leasing, Inc., as "Schultz", and to The J. R. Watkins Company and Watkins Products, Inc., as "Watkins".

The lease from Schultz to Watkins executed on March 24, 1955, was for a period of six months, with automatic renewal unless terminated. It provided that Watkins was to pay as rental for the leased equipment 30 cents a mile while the leased equipment was being operated by Watkins; that public liability and property damage insurance was to be carried by Watkins; that Schultz was to carry collision, upset, fire, theft and windstorm insurance; that Watkins was not to be liable for damage to or for loss of the equipment, regardless of cause; that Watkins was to furnish full-time drivers subject to its exclusive jurisdiction, direction and control; that workmen's compensation insurance and social security and unemployment payments, with respect to the drivers, were to be borne by Watkins; and that Schultz was to be responsible for the maintenance of the leased equipment in first-class condition and was to pay the necessary expense for fuel, oil and grease while the vehicles were being operated by Watkins. On the same day the lease from Schultz to Watkins was entered into, another lease agreement was executed by them, under which Watkins leased the same equipment back to Schultz for its use when not needed by Watkins for transportation of its merchandise. That lease provided that Schultz was to pay Watkins 30 cents a mile while the equipment was used by Schultz; that Schultz was to maintain the equipment in first-class condition; that the cost of public liability and property damage insurance while the equipment was being used by Schultz was to be borne by it; that Watkins was to furnish Schultz competent drivers, who were to be considered employees of Watkins, but that Schultz was to reimburse Watkins for the salaries of the drivers and for workmen's compensation expense and unemployment and social security payments on their account, during the times the leased equipment was being used by Schultz; and that the expense of operating and maintaining the equipment was to be paid by Schultz.

Prior to their execution, copies of the proposed lease agreements were submitted to the District Director of the Bureau of Motor Carriers, Interstate Commerce Commission, in Minneapolis. There is no basis in the record for any inference that the agreements were not entered into honestly and in entire good faith by Schultz and Watkins, and without any intent to evade the law.

The first time the legality of the agreements and the transportation operations of the parties conducted in conformity with them was challenged was in 1956, when the Interstate Commerce Commission brought an action against Schultz and Watkins in the United States District Court for the District of Minnesota to enjoin such operations. The issues raised by the pleadings and tried to the Court, without a jury, were then, as they are now, whether the transportation complained of was private transportation by

Watkins of its own merchandise in motor vehicles leased from Schultz and operated by drivers (former employees of Schultz) employed by Watkins, or whether the transportation was for-hire transportation by Schultz as a common or contract carrier without authority from the Commission. The District Court, in a carefully considered opinion filed on August 13, 1957 (I. C. C. v. Schultz Transit, Inc., 12 F.C.C. 152, 207 F.Supp. 749), determined that the Interstate Commerce Commission had failed to establish "that when Schultz' trucks are engaged in transporting Watkins' merchandise, the movement is one that comes within the statutory purview of a common or contract carrier"; and that "[t]he evidence also fully warrants a finding that Watkins in the transportation of its merchandise and in the fulfillment of the reciprocal leases in question has functioned as a private carrier and that Schultz has not functioned as a common or contract carrier with respect thereto." Findings of fact and conclusions of law in conformity with the Court's opinion, and a judgment dismissing the action of the Commission, were filed and entered on September 6, 1957. The Commission took no appeal from the judgment.

On May 18, 1959, the Commission, of its own motion, pursuant to 49 U.S.C.A. §§ 304(c) and 42, ordered an investigation of the operations of Schultz and Watkins to determine whether Schultz was engaging in the transportation of property for compensation as a common or contract carrier by motor vehicle in violation of 49 U.S.C.A. §§ 306(a) (1) or 309(a) (1), and whether Watkins had participated in such violations. The investigation was conducted by the Commission's Bureau of Inquiry and Compliance. There was a hearing before an Examiner. Watkins and Schultz contended that the findings and judgment of the District Court, under the rule of res judicata and collateral estoppel, precluded the relitigation of the issues raised by the Bureau. The Examiner held, in effect, that new facts and changed conditions which had occurred since the judg-

ment was entered had altered the legal relationship of the parties and had made the doctrine of res judicata or collateral estoppel inapplicable. In his Report the Examiner states:

"Since the court decision, the operations under the lease arrangement have greatly expanded both in the number of vehicles and drivers used but also in the territory covered. Before the court decision, there were three operations referred to as the east coast operation, the Dakota operation and the Michigan operation.

"Since the court decision, three additional operations have been set up referred to as the Central operation, the Iowa operation and the Pacific Coast operation. The East Coast operation between Winona, Minnesota, and east coast points, principally, Newark, New Jersey, is for the most part a two-way movement of Watkins products but there are one-way movements. The Dakota operation, from Winona to South Dakota points, is a one-way Watkins movement. The Michigan operation, between Winona and Michigan points, is a two-way Watkins movement. The Iowa operation from Winona to Iowa points is a peddle run and principally a one-way Watkins movement. The Pacific Coast operation, from Winona to west coast points, is almost entirely a one-way Watkins movement. The Central operation, not exactly described in the record but presumably between Winona and points in central United States, is generally a two-way Watkins movement."

The Supreme Court, in the case of Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, pages 599, 600, 68 S.Ct. 715, page 720, 92 L.Ed. 898, with respect to the rule of res judicata and collateral estoppel, said:

" * * * [A] subsequent modification of the significant facts or a change or development in the con-

trolling legal principles may make that determination [a prior adjudication] obsolete or erroneous, at least for future purposes.

\*  \*  \*  \*  \*  \*

"\* \* \* [A] judicial declaration intervening between the two proceedings may so change the legal atmosphere as to render the rule of collateral estoppel inapplicable."

The Court ruled that certain cases decided by it after a judgment for a taxpayer by the Board of Tax Appeals, constituted a "sufficient change in the legal climate to render inapplicable \* \* \* the doctrine of collateral estoppel \* \*." (Page 606, 68 S.Ct. page 723.)

We may assume, without deciding, that the expansion by Schultz and Watkins of their transportation operations since 1957 under their lease agreements did not bring about such a significant change in the factual situation as would render the judgment upon which they rely inapplicable as an estoppel, absent any change in the legal climate. We are, however, unable to escape the conclusion that there has been a substantial change in the applicable law, due to the recent decision of the Supreme Court in United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360. In that case a three-judge District Court (Drum v. United States, W.D.Okla., 193 F.Supp. 275) had set aside a cease-and-desist order of the Interstate Commerce Commission similar to the order in suit. The order was based upon the Commission's determination that the owners of motor vehicles who, under lease agreements (not dissimilar to those in this case) with Oklahoma Furniture Manufacturing Company, transported its merchandise and raw material, were "contract carriers." The District Court held that the transportation under the lease agreements was not contract carriage by the owners of the vehicles, and that the Manufacturing Company was a "private carrier" within the meaning of 49 U.S. C.A. § 303(a) (17). The Supreme Court reversed. We shall not attempt to re-state its reasons for its conclusion that the order of the Commission was justified. They can best be gleaned from the Court's own opinion. That a shipper, claiming to be a "private carrier" in leased motor vehicles, controls the vehicles and by the terms of the lease agreement employs and directs the drivers, is no longer alone determinative of the question whether the transportation is "private" or "for-hire". That is made apparent by the concluding paragraph of the Court's opinion, reading as follows (pages 385–386 of 368 U.S., page 416 of 82 S.Ct.):

"It is evident that the Commission here refused to allow Oklahoma [Furniture Manufacturing Company] the status of a private carrier because of its belief that financial risks are a significant burden of transportation, and its belief that such risks had been shifted by Oklahoma to the owner-operators to an extent which rendered the sanctioning of the operation as private carriage a departure from the statutory design. We think that such conclusions were well within the range of the responsibility Congress assigned to the Commission. The District Court explicitly recognized the propriety of the Commission's inquiring into the substance of the arrangements. Yet the court's conclusion that 'what is involved here is private carriage on the part of the Company, rather than transportation for-hire by the owner-operators,' 193 F.Supp., at 281, rests on no articulated premise other than that Oklahoma did have control. If the court intended to hold that the Commission is confined to the 'control' test, we think it clearly in error in view of the statutory objectives which we have set forth above. If, on the other hand, the court meant to substitute its judgment for the Commission's on the question of substance, we think that, on this record, it indulged in an unwarranted in-

cursion into the administrative domain."

Compare, John J. Casale, Inc. v. United States, D.C.S.D.N.Y., 208 F.Supp. 55.

 Our conclusion is (1) that the rule of res judicata and collateral estoppel is inapplicable in the instant case in view of United States v. Drum, supra, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360; (2) that the evidentiary basis for the order of the Commission was not inadequate; and (3) that the Commission did not act arbitrarily or capriciously in entering its order.

The complaint of the plaintiffs is dismissed.